APPLETON WATERWORKS COMPANY, Respondent, vs. CITY OF
APPLETON, Appellant.

*December 19, 1902—January 13, 1903.*

*Municipal corporations: Waterworks bonds: Issuance: "Non-liability" bonds: Municipal bonds: Vote of electors: Statutes: Applicability: Construction: Repeal: Cities under special charters: Class legislation: Constitutional law.*

1. Sec. 16, subch. V, ch. 441, Laws of 1885 (an act to consolidate and amend the charter of the city of Appleton),—a city containing a population of 15,085, and hence of the third class,— provides that "the common council shall not have power to issue any bonds or other evidences of debt . . . except in cases authorized by this act, or some law of this state." Secs. 942, 943, R. S. 1878, in force at the time, authorized cities to issue bonds for waterworks, but provided that no bonds should be issued therefor until the proposition had been submitted to the electors of the city and adopted by a majority voting thereon. Said secs. 942, 943 were re-enacted in the Wisconsin Statutes of 1898, with additional provisions, that "unless otherwise provided by law" no city should issue bonds, except in certain instances, "unless upon compliance with the following conditions," followed by specific directions as to the manner in which elections should be held. Ch. 311, Laws of 1893 (sec. 926—11, Stats. 1898), authorizes cities incorporated by and acting under a special charter to issue regular municipal bonds for waterworks. Ch. 348, Laws of 1899, entitled "An act to authorize cities of the third and fourth classes to acquire waterworks and issue bonds therefor," by secs. 1–3 thereof, authorizes cities of the third and fourth classes to construct waterworks; requires, before proceeding with the construction, that the question of the building thereof shall be submitted to a vote of the electors of the city, and directs, if a majority of the ballots cast favor the proposition, that the common council may issue bonds for the unpaid cost of the works, which shall recite on their face that they are secured by trust deed or mortgage on the waterworks and that no municipal liability is created thereby. *Held*, that said ch. 348, Laws of 1899, is simply an enabling act, intended to provide a way by which cities of the third and fourth classes may purchase or build waterworks by the issuance of "non-liability" bonds, and not an act imposing further conditions upon cities

which propose to issue "municipal" bonds, or as an act repealing existing legislation.

2. Said ch. 348, Laws of 1899, so far as it purports to authorize such cities to build and operate waterworks, is declaratory of existing power, and must be construed as constituting one scheme and carrying but one definite purpose, and hence is not applicable to a case where a city, under definite authority, given elsewhere in the law, is about to build waterworks, and pay for them in cash or in "municipal" bonds, strictly so called.

3. Ch. 326, Laws of 1889 (the general charter law), governs cities organized under its provisions, and all cities organized under special charters which shall in the manner therein specified adopt its provisions. Sec. 133 thereof authorizes the common council of all cities acting under the general charter law to issue bonds for the purpose, among others, of constructing waterworks, but provides that no bonds shall be issued therefor unless authorized by a three-fourths vote of the councilmen-elect. Ch. 312, Laws of 1893, amends said sec. 133 by adding another proviso, to the effect that in cities of less than 5,000 population the bond ordinance must be ratified by a vote of the people. This is now incorporated in sec. 925—133, Stats. 1898. At the same time ch. 311, Laws of 1893, was enacted, providing that cities, acting under special charters, having a population of 3,000 or more, should have power, among others, to issue bonds for waterworks by a three-fourths vote of the common council. This now appear as sec. 926—11, Stats. 1898, the population limitation having been stricken out. Secs. 942, 943, R. S. 1878, authorizes cities to issue bonds for waterworks, but provide that no bonds shall issue until the proposition has been submitted to a vote of the people, and adopted by a majority of the electors voting thereon. Said secs. 942 and 943 were re-enacted, with additional provisions, in the Statutes of 1898. *Held:*

(1) That chs. 311 and 312, Laws of 1893, did not constitute a revision of the law on the subject, and thereby impliedly repeal so much of sec. 943, R. S. 1878, as imposed additional conditions on the exercise of the bonding power, but merely threw additional safeguards around the power to issue bonds.

(2) That a city operating under a special charter (ch. 441, Laws of 1885), and thereby prohibited from issuing bonds except in cases authorized by some law of the state, could not issue bonds for waterworks without first submitting the question to a vote of the inhabitants as provided by said sec. 943.

4. Inasmuch as sec. 925—133, Stats. 1898 (governing cities organ-- ized under the general charter law), and sec. 926—11, Stats. 1898 (governing cities organized under special charters), both authorize the issue of bonds for waterworks, and are equally subject to sec. 943, Stats. 1898 (requiring a vote of the inhabitants in favor of bonding before the issue of bonds for waterworks), if either is subject thereto, it is immaterial whether a city, acting under a special charter, has adopted the general charter law as to the provisions relating to waterworks, or whether, by virtue of ch. 165, Laws of 1899 (validating supposed but incomplete adoptions of the general charter law), such incomplete and insufficient action of a special-charter city has become operative.

5. Sec. 4987, Stats. 1898, provides that "none of the general provisions of these Revised Statutes shall be construed so as to affect or repeal the provisions of any special acts relating to particular cities unless such acts are enumerated in the acts hereby repealed." *Held*, that parts of the general charter law, adopted or attempted to be adopted by the city of Appleton and validated by ch. 165, Laws of 1899, did not become part of any special law relating to Appleton, but remained a general law, and were not changed in character by the fact that a city had chosen to adopt it.

6. Sec. 926—11, Stats. 1898, governing cities operating under special charters, is a general law, applicable to a valid legislative class of cities, namely, all cities operating under a special charter.

7. While, in cases of extreme doubt, the fact that great mischief may result from frequent and long continued violation of law by municipalities may be weighty, it does not justify courts in disregarding and overriding plain and imperative statute law.

APPEAL from an order of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

*Geo. G. Greene,* of counsel, for the appellant.

*Lyman E. Barnes,* attorney, and *George Lines,* of counsel, for the respondent.

WINSLOW, J. The plaintiff is a taxpayer in the defendant city, and brought this action in equity in February, 1902, to perpetually restrain the city from issuing or negotiating municipal bonds to the amount of $260,000, which were about

to be issued under an ordinance then recently passed by the common council of the city, for the purpose of constructing waterworks in said city. The grounds upon which the injunction is sought are that the provisions of sec. 943, Stats. 1898, and ch. 348, Laws of 1899, (as amended by ch. 143, Laws of 1901), have not been complied with. A preliminary injunctional order was granted, and a motion to dissolve the same was denied by the court, and from that order the defendant appeals.

It is admitted that neither the question of the construction of the works, nor the question of the issuance of the bonds, has ever been submitted to a vote of the people; and the simple question is whether the city of *Appleton* can legally issue municipal bonds without such vote, or either of them. The question was argued with ability upon both sides, and it is certainly a most important one to the municipalities of the state, and one not easy of satisfactory solution. To understand it fully, a brief review of the various statutes bearing upon the subject must first be had.

The city of *Appleton* is a city of the third class, containing a population of 15,085, and was incorporated under a special charter, which was finally consolidated and amended by ch. 441, Laws of 1885. This act contained no provision authorizing the issuance of municipal bonds for any purpose, but, on the contrary, contained the express provision that "the common council shall not have power to issue any bonds or other evidences of debt . . . except in cases authorized by this act or some law of this state." (Sec. 16, subch. V, ch. 441, Laws of 1885). As there was no provision in the charter authorizing the issuance of time bonds, it is plain that the city did not have power to issue the bonds in question under its special charter when the same was passed in 1885. At this time, however, there stood upon the statute books of the state secs. 942 and 943, R. S. 1878, which gave power generally to certain municipal and *quasi*-municipal corporations to issue

negotiable bonds for certain purposes and under certain conditions. Sec. 942 provided that "any county, town, village, or city" might issue negotiable bonds, "under the provisions of this chapter," for the purpose of paying for an authorized subscription to the stock or bonds of any railroad corporation, and for the following purposes:

"The purchase or erection of public buildings; the purchase of fire engines or any apparatus for the extinguishment of fires, the purchase or erection of pumps, water mains, reservoirs or any other waterworks; . . . the grading, macadamizing or paving of streets; the laying out, altering or widening thereof or of public grounds or parks; the purchase or improvement of cemeteries, the construction of school buildings, or in exchange for or compromise of any bonds previously issued and outstanding; provided, that the principal of such new bonds shall not exceed the principal of the old bonds; or to accomplish any other purpose in the lawful power of such corporation."

By the provisions of ch. 58, Laws of 1897, a slight change was made in this section, and by the revision or compilation of 1898 certain additional purposes were added to the list of purposes for which bonds might be issued, but, as neither of these amendments is material to the present question, it will not be necessary to further refer to them. Sec. 943, so far as material to this discussion, provided that:

"No bonds shall in any case be issued by any town, village or city until the proposition for their issue for the special purpose thereof shall have been submitted to the people of such municipality and adopted by a majority voting thereon."

By the revision of 1898 there was added to sec. 943 certain provisions prescribing the manner in which the election is to be held, which provisions begin as follows:

"Unless it is otherwise provided by law no town, city or village shall issue any bonds, except to aid in the construction of a railroad, unless upon compliance with the following conditions: whenever," etc. (Here follow specific directions as to

the manner of holding the election, which are not necessary to
be stated.)

Had there been no more legislation on the subject, there can
be no doubt of the proposition that the city of *Appleton* could
only issue bonds for the purpose of building waterworks after
an affirmative vote of the electors. The situation remained
unaltered until the passage of the general city charter law
(ch. 326, Laws of 1889), which was intended to govern all
cities of the state thereafter created, and all cities previously
created which chose to adopt its provisions in the manner
prescribed by the act. Sec. 133 of this act, (as amended by ch.
312, Laws of 1893, and ch. 294, Laws of 1895), provided as
follows:

"The council shall have authority to issue bonds for the
following purposes only: (1) Building school houses and for
public libraries. (2) Building bridges. (3) Erecting public
buildings for the use of the city. (4) Purchase of apparatus
for fire protection. (5) Street improvements which are to be
paid for by the city. (6) Waterworks, sewer, and drains,
lighting works for streets and public buildings, and in cities
of other than the first class for the construction and operation
of lighting works to supply the city and its inhabitants with
electric or other light. (7) For the purchase or establish-
ment of public parks, public drives, boulevards, cemeteries,
garbage grounds, public hospitals and purchasing sites for
public buildings. (8) Purchase of toll bridges and ap-
proaches. (9) Refunding municipal indebtedness. (10)
Such other purposes as are authorized by these statutes. No
such bonds shall be issued unless authorized by an ordinance
adopted by a vote in favor of the same of at least three-fourths
of all the members of the common council elect, said vote to be
at a regular meeting not less than one week after the proposed
ordinance shall have been published in the official paper of the
city, and in cities with a population of less than five thousand
unless such ordinance shall be ratified by a majority of the
electors of said city who shall vote at a special election called
for that purpose."

This section is now embodied in sec. 925—133, Stats. 1898. It contains further provisos as to the total amount of indebtedness allowed, the form of bonds, time of payment, and levy of taxes, which are not material here. It is to be noted also, that the proviso requiring the ratification of the ordinance by popular vote in cities of less than 5,000 population was engrafted into the section by ch. 312, Laws of 1893.

At the same time that ch. 312, Laws of 1893, was passed, amending sec. 133 aforesaid, another act was passed, known as "Chapter 311 of the Laws of 1893." Secs. 1 and 2 of this act are as follows:

"Sec. 1. The common council of any city incorporated by and operating under a special charter granted by the legislature of this state containing a population of three thousand inhabitants or more as shown by the last state or national census is hereby authorized to issue corporate bonds, payable in lawful money of the United States within twenty years from their issue, bearing interest payable annually or semi-annually at a rate not exceeding six per cent. per annum, for the following purposes: (1) For the erection and construction of a city hall and the purchase of a site for the same. (2) For the construction and extension of waterworks or the purchase of the same, and for constructing sewers, and for the improvement and maintenance of the same. (3) For the erection, construction and completion of school buildings and the purchase of school sites. (4) For the purchase of sites for engine houses, for fire engines and other equipments of the fire department and for the construction of engine houses. (5) For the purchase of sites for police stations and for the construction of buildings thereon for the use of the police department. (6) For the construction of viaducts, bridges and for repairs of the same. (7) For the erection and construction of library and museum buildings and the purchase of sites for the same. (8) For the establishment of public baths and hospitals and the purchase of sites for the same. (9) For the purchase of lands for public parks and improvements thereof, and for the payment of purchase money and interest thereon which may be or become due for

park lands already acquired or contracted for. (10) For permanently improving streets in such city, and for creating a fund out of which to advance the cost of repairs to sidewalks in anticipation of the collection of special assessments for such cost of repairs by the treasurer of such city. (11) For the construction or purchase of electric or gas light plants for lighting streets and public buildings. (12) For refunding existing indebtedness.

"Sec. 2. No bonds shall be issued under the provisions of this act, and no contract shall be entered into or obligation incurred by any such city in contemplation of the issue of such bonds in the future, unless such contract or obligation and the issue of such bonds for the payment of the same shall have been authorized by ordinance adopted by a vote in favor of the same of at least three-fourths of all the members of the council elect, said vote to be at a regular meeting of such common council, not less than one week after the proposed ordinance shall have been published in the official paper of such city; and provided, that no such bonds shall be issued, so that the amount thereof together with all the other indebtedness of such city, shall exceed five per cent. of the assessed valuation of such city at the last assessment for state and county taxes previous to the incurring of such indebtedness."

These sections were amended in some minor particulars by chs. 110, 135 and 173, Laws of 1897, and they now appear with such amendments as sec. 926—11, Stats. 1898, with the single exception that the clause limiting their operation to cities containing a population of 3,000 or more was stricken out in the revision of 1898, so that, in terms, they now purport to cover all cities of the state operating under special charters. No mention is made of this omission in the compiler's note to the section as it now stands in the Statutes of 1898.

In June, 1894, the common council of the city undertook, by ordinance, to adopt, as part of the charter of the city, sec. 925—133, *supra,* but it is admitted that the publication of the ordinance of adoption was insufficient. The city and its officers having assumed the act under sec. 925—133, however,

it is claimed by appellant's counsel that it has become effective
by virtue of ch. 165, Laws of 1899, which provides that in
case of the attempted adoption of the whole or a part of the
general charter by any city, and of assumed action thereunder,
any question of the validity of such supposed adoption must
be tested by *certiorari,* or some other direct action brought for
the purpose, within three months after the assumed adoption,
and not thereafter, and, if not so tested and set aside, it shall
not be questioned or held invalid in any subsequent action or
proceeding. This contention is only material in one phase of
the controversy, which will be hereafter referred to.

In 1899, and prior to any proceeding looking towards the
issuance of the bonds in question, another act was passed by
the legislature, known as "Chapter 348 of the Laws of 1899,"
entitled "An act to authorize cities and villages to acquire
waterworks and issue bonds therefor." Sec. 1 of this act pro-
vides that cities of the third and fourth classes are authorized
to purchase or build waterworks, to provide a supply of water
for fire or domestic purposes or both. Sec. 2 provides that,
before proceeding with the purchase or building of the works,
the council shall, by resolution, submit the question of such
building or purchase to the electors of the city at a municipal
or special election, and specifies the form of the ballot, and the
manner of holding the election. Sec. 3 provides that, if a
majority of the ballots cast are in favor of the proposition, the
common council may issue bonds for the unpaid portion of the
purchase price or cost of the works, which shall recite on their
face that they are secured by trust deed or mortgage upon the
works, and that no municipal liability is created thereby, with
certain other details not material here. Sec. 4 contains only
detailed provisions as to form of the trust deed or mortgage,
the creation of a sinking fund, and the payment of principal
and interest, which are unnecessary to be considered. The
bonds contemplated by the last-named act are called in the

briefs "nonliability bonds," and, for want of a better name, they will be so referred to in this opinion.

We have now stated the substance of the general laws bearing upon the subject which were upon the statute books at the time the bonds in question were proposed to be issued, and the action commenced, and are in a position to fully appreciate the questions involved.

The plaintiff's contention is that both ch. 348, Laws of 1899, and sec. 943, Stats. 1898, apply to the city of *Appleton,* and hence that it can issue no bonds for the construction or purchase of waterworks without having held both of the elections required by those acts. On the other hand, the city's contentions are (1) that ch. 348, Laws of 1899, is unconstitutional; (2) that, if it be constitutional, it does not apply to the city of *Appleton,* but only to cities proposing to issue "nonliability bonds"; (3) that sec. 943, *supra,* has been, in effect, repealed by the provisions of secs. 925—133 and 926—11, Stats. 1898, so far as the bonds authorized to be issued under said last-named sections are concerned.

The difficulties which are met in the attempt to reconcile the various acts, and extract from them a definite legislative purpose, are manifest from the mere reading of them. Mere difficulties in construction, however, do not justify courts in ignoring or setting aside direct legislative mandates. Courts are bound to reconcile and apply statutory provisions, if by any fair and reasonable construction they can be reconciled, and they are bound to uphold them unless their unconstitutionality be plain. These are cardinal principles, which all recognize.

Bearing these principles in mind, we will first take up the question as to the application of ch. 348, *supra,* to the situation in hand. The act itself purports to apply in its first section to all cities of the third and fourth classes, and hence apparently includes the city of *Appleton.* It provides that, be-

fore purchasing or building waterworks, the common council
of such a city shall submit the question for decision to the
electors of the city. The appellant attempts to avoid its effect
in the present case by claiming that it is unconstitutional, and
that, if constitutional, still it is simply an enabling act, in-
tended to apply only to cities which propose to issue "non-
liability bonds," and hence does not affect the powers of cities
proposing to issue regular municipal bonds. The grounds
upon which the unconstitutionality of the act is claimed are:
First, that it is a local act, and that the subject is not ex-
pressed in its title,—the title of the act applying to all cities,
while the body of the act applies only to cities of the third and
fourth classes; second, that it is a law amending the charters
of certain cities, which, under secs. 31, 32, art. IV, Const.,
can only be done by general law, and this law is a special law,
because the attempted classification is invalid, not being
founded on any real differences of situation or condition;
third, that, under its provisions, while no general municipal
indebtedness may be incurred by the city still a certain form
of indebtedness is incurred, for the payment of which certain
property of the city is mortgaged, and hence it violates sec. 3
of art. XI, Const., which requires cities which become in-
debted *"in any manner* or for any purpose" to provide for the
levy of taxes to pay the same before or at the time of the con-
tracting of the debt. The questions thus presented are inter-
esting and important questions, and their proper solution
would call for careful consideration and research, especially
with regard to the third objection. We find it unnecessary,
however, in view of the conclusion we have arrived at as to
the purpose and application of the law, to decide these ques-
tions, and we deem it best to reserve them until they are pre-
sented in a case where their decision is essential.

After mature consideration of the scope and provisions of
the law, we agree with appellant's counsel that it should be
construed simply as an enabling act, intended to provide a

way by which cities of the third and fourth classes may pur-
chase or build waterworks by the issuance of the so-called
"nonliability bonds," and not as an act imposing a further
condition upon cities which propose to issue real municipal
bonds, or as an act repealing any existing legislation. This
result is reached rather by consideration of the act taken as a
whole, in view of the existing condition of the statutes and
common law upon the subject of the powers of cities to build
and operate waterworks, than by construction of any specific
sentence or part of the act. As before stated, it includes, in
terms, all cities of the third class; but, so far as it purports to
authorize such cities to build or operate such plants, the act
was, as defendant's counsel well says, "an idle declaration of
existing power." *Ellinwood v. Reedsburg,* 91 Wis. 131, 64
N. W. 885; secs. 927—1, 926—11, 925—133, and 942, Stats.
1898. The legislature must be presumed to have in mind the
existing condition of the law, and must also be presumed to
intend their legislation to fulfill some useful purpose. The
power to issue "nonliability bonds," however, was not con-
ferred in terms by any statute, and for this purpose legislation
was evidently thought to be necessary; and the entire law (ex-
cept the first section, which, as before pointed out, was un-
necessary) seems framed to subsist together and as a complete
whole. Its provisions are so framed as to follow each other in
an orderly and consecutive way from the time of the inception
of the proceedings in the common council until the execution
of the bonds and the delivery of the trust deed or mortgage.
We cannot resist the conclusion that they must all be con-
strued together as constituting one scheme, and carrying out
one definite purpose, and hence as not applicable to the case
where a city, under definite authority given elsewhere in the
law, was about to build waterworks, and pay for them in cash
or in real municipal bonds. This being our conclusion upon
this question,. any further consideration of ch. 348, *supra,* is
unnecessary, and we proceed to the question of the application

of sec. 943, *supra,* to the case in hand, and here we meet more doubtful questions.

This section, in terms, forbids the issuance of bonds by "any town, village or city" until the question has been submitted to a vote of the people, and approved by a majority vote. This law existed at the time of the passage of the special charter of the city of *Appleton*. Nothing in that charter contravened its provisions or limited its effect. Hence there can be no doubt that when that charter was passed, in the year 1885, and for a number of years thereafter, it was in full force and effect in that city. Has this situation changed, and the city been relieved from the requirements of sec. 943? There has been no express repeal of that section. On the other hand, it still stands upon the statute books, with material additions, as sec. 943 of the revision of 1898; but the appellant's claim is that there has been a repeal by implication, resulting from the legislation of 1889 and 1893, and this question must now be considered. It is not claimed that, so far as the city of *Appleton* is concerned, there was any repeal by the passage of the general charter law of 1889, but that law is so intimately connected with the legislation of 1893 that it must be noticed in the discussion of the question presented.

Ch. 326, Laws of 1889, known as the "general charter law," was a general law providing for the government of all cities in the state which should thereafter organize under its conditions, and all cities then existing under special charters which should adopt the act in the manner therein provided. Hence it did not, at the time of its passage, affect in any manner the city of *Appleton*. It divided cities into four classes, according to population, and provided a complete charter for each class. With subsequent additions and amendments, it still stands as the general charter law of the state, and is incorporated in the Statutes of 1898. Sec. 133 of this law gives power to the common council of all cities acting under it to

issue bonds for a number of public purposes, including water-works, with a proviso that no such bonds shall be issued unless authorized by a three-fourths vote of the councilmen-elect. Nothing is said in the act regarding a vote of the people upon the question. In the year 1893 the general charter law received a number of amendments by the provisions of ch. 312, of the laws of that year, and among these amendments were several directed to sec. 133, by which a number of public purposes were added to the list of purposes for which bonds could be issued, and a further proviso added to the effect that in cities of less than 5,000 population the bond ordinance must be ratified by vote of the people. At the same time (and apparently with the intention of putting cities acting under special charters on an equal footing in this respect with cities organized under the general charter), ch. 311 was passed which provided that cities under special charters, having a population of 3,000 or more, should have power to issue bonds, by three-fourths vote of the common council, for various public purposes, including waterworks and most of the purposes named in the general charter; this law now appearing with subsequent amendments as sec. 926—11, Stats. 1898, the population limitation having been stricken out.

The appellant's claim, in brief, is that this legislation of 1893, comprised in chs. 311 and 312 of the laws of that year, together with ch. 274 of the laws of the same year, authorizing villages to issue bonds for public purposes, constitutes a revision of the law on the subject, and impliedly repeals so much of sec. 943 as imposes additional conditions upon the exercise of the power. That a statute which revises the whole subject-matter of a former statute works a repeal of the former statute, without express words to that effect, is well settled. *Dane Co. v. Reindahl,* 104 Wis. 302, 80 N. W. 438. The question is, therefore, whether the laws of 1893 were intended to, and do in fact, revise the law on the subject of the issuance of municipal bonds for the purposes named in them.

There are certainly considerations of considerable force in favor of this view.  The fact that a proviso was inserted in sec. 133 requiring ratification of the ordinance by vote of the people in all cities under the general charter containing a population of less than 5,000 is pointed out as manifestly inconsistent with the idea that an election must be held in all cities before the issuance of any bonds, and as involving the absurdity of demanding two elections upon the same subject in cities containing a population of less than 5,000.  The fact that the limitations imposed by sec. 943 are nowhere mentioned in either of the laws of 1893, but that specific provisos are inserted in both, requiring a certain vote of the council, in a manner indicating that such a safeguard was deemed sufficient, is also urged.  Again, it is said that the law has been practically construed, that many cities have issued and sold bonds based simply on compliance with the requirements of the Laws of 1893, and that, if it be held that the provisions of sec. 943 are applicable, great mischief would be done.  It is argued, also, that this court, in the cases of *Ellinwood v. Reedsburg,* 91 Wis. 131, 64 N. W. 885; *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270, and *Burnham v. Milwaukee,* 98 Wis. 128, 73 N. W. 1018, has practically construed the Laws of 1893 as controlling and exclusive.  It may be said at once, with regard to this last contention, that in neither of the cases cited was the question now before us raised, debated, nor decided.  On the other hand, it is said that sec. 943 is framed in the most positive words of command,—"No bonds shall *in any case* be issued by any town, village or city until" the affirmative vote of the electors has been had; that no later legislation should be construed to repeal such mandatory legislation, designed for the curbing of the reckless borrowing of money, unless the purpose to repeal be clearly expressed, or the acts be absolutely irreconcilable; that neither the provisions of ch. 311 nor ch. 312 are necessarily in conflict with sec. 943, nor inconsistent with it, but may be reason-

ably construed as simply throwing another safeguard about the
public treasury; that the provisions of chs. 311 and 312 are
nowhere declared to be exclusive, or to repeal the provisions
for popular vote under sec. 943, although the subject of a
popular vote was under consideration as evidenced by the re-
quirement of a vote upon the bond ordinance in cities of less
than 5,000 population, industriously inserted in sec. 133 at
this time; and finally the fact that all of these laws, with some
important amendments (especially to sec. 943), were inserted
in the Statutes of 1898. These last-named statutes, while not
denominated "Revised Statutes," are such in fact. The act is
entitled "An act to revise the General Statutes," and was in-
tended to be a revision of the entire body of the general laws
of the state. *Dane Co. v. Reindahl, supra.* All of these con-
siderations urged by the respondent are of weight, but espe-
cially the last one named. When the legislature was engaged
in making a complete revision of the general law of the state,
it must, of course, be presumed that they had in mind the
existing state of the law, and that they did not intentionally
insert in the revision inconsistent or repugnant provisions. It
is certain, also, from inspection of the various sections in ques-
tion here, that they did not pass over them carelessly, nor re-
insert them inadvertently. They made numerous changes in
all of them, some of which were merely verbal, but others were
of a material nature. In sec. 133 they added an additional
public purpose for which bonds might be issued, namely,
"such other purposes as are authorized by these statutes."
They also inserted a specific requirement for the levy of a
direct tax to pay the principal and interest within twenty
years, as required by sec. 3, art. XI, Const. In combining
secs. 1, 2, and 3 of ch. 311 into one section, known as
"section 926—11," they eliminated the clause confining its
application to cities of more than 3,000 population, and in-
serted the constitutional requirement as to the levying of a
tax, and a requirement that the bonds should contain a recital

of the fact that such tax had been provided. In sec. 942 they inserted a clause authorizing the issuance of bonds for certain additional public purposes. In sec. 943 they left the imperative mandate that "no bonds shall *in any case* be issued" without a previous vote of the people still standing, and added a general clause at the end which seems of the utmost significance. There had been no general and uniform law regulating the manner of holding the election in cities, but by ch. 274, Laws of 1893, a general provision prescribing the manner of holding such elections in villages had been enacted. The legislature evidently deemed that it would be well to have a uniform method which should be applicable to cities as well, and they therefore added to sec. 943 an entirely new subdivision, prescribing the manner of holding such elections in towns, villages, and cities, prefacing the same with the following sweeping provision:

"Unless it is otherwise expressly provided by law no town, city or village shall issue any bonds .. . . unless upon compliance with the following conditions: [Here follow specific directions as to the manner of holding the elections.]"

As to this last addition to sec. 943, it is said, in effect, by appellant's counsel, that it really is a limitation on the necessity of holding elections to cases not otherwise provided by law, and that secs. 925—133 and 926—11 do otherwise provide; hence that cities covered by those sections are expressly relieved from holding elections previous to the issuance of bonds for any of the purposes named in those acts. We cannot agree to this construction. The proviso is out of place if this construction be the correct one. It should be at the beginning of the section. Standing where it does, it is plain that it refers only to the method of holding the election, and simply excepts from the operation of this method those cities (of which there are some in the state) which have special charter provisions governing the manner of holding such elections.

In any view which we have been able to take of the subject, we have not been able to perceive how we can escape from the plain and imperative mandate of sec. 943, which has stood upon the statute books of the state for many years, which is not essentially inconsistent with any of the other statutes relied on, which has never been repealed in direct words, and which has so recently been reincorporated *in hæc verba,* after careful consideration and rewriting, in the general body of the laws of the state. Cumbrous it may be, and inconvenient it may also be, especially for those who desire to make expensive city improvements to be paid for by future taxpayers; but the answer must be that the court cannot set aside statutes on the score of inconvenience or clumsiness, nor can it violate a plain and valid legislative mandate on the ground that it is burdensome or unnecessary.

So far in this opinion we have not considered the question whether sec. 925—133 of the general charter has become a part of the charter of the city of *Appleton* by virtue of the provisions of the limitation law (ch. 165, Laws of 1899), notwithstanding its supposed adoption by the city was incomplete and insufficient. This question has not seemed vital, because sec. 925—133, governing cities under the general charter, and sec. 926—11, governing cities under special charters, both authorize the issue of bonds for waterworks, and are equally subject to the provisions of sec. 943 if either is subject thereto, and hence it seemed to make no difference in the result of this litigation whether the city was acting under one section or the other.

There is one contention made by the appellant, however, which demands some notice of this question. The claim is that, by virtue of the attempted adoption and the operation of the limitation statute, sec. 925—133 has become a part of the special charter of the city of *Appleton.* Sec. 4987, Stats. 1898, provides that "none of the general provisions of these Revised Statutes shall be construed so as to affect or repeal

the provision of any special acts relating to particular cities, unless such acts are enumerated in the acts hereby repealed," and hence *Appleton* is not affected by the provisions of sec. 943. The fault in the reasoning is manifest. Even if the section in question has become a part of the municipal law of *Appleton* (which, however, we do not decide), it has not become and cannot become any part of any special law relating to *Appleton,* nor to any particular city. It is still a part of the general law, which has not been changed in character by the fact that a city has chosen to adopt it. Nor can sec. 926—11 be called a "special" act. It is a general law applying to a valid legislative class of cities, namely, all cities operating under a special charter. *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270. So we still find it unnecessary to decide the question whether sec. 925—133 is a part of the charter of the city of *Appleton;* nor does it seem to be a very important question, in view of the great similarity between the provisions of that section and the provisions of sec. 926—11.

With regard to the argument that great mischief will result from this conclusion, because, doubtless, many municipal bonds have been issued without a vote of the people, we shall say but little. In the first place, we have no knowledge that such has been the fact; but, even if it be true, it cannot justify the courts in overriding plain and imperative statute law. In cases of extreme doubt, such a consideration might be weighty; but, in a case where the law is certain, frequent and long-continued violation affords no ground for disregarding it.

*By the Court.*—Order affirmed.