Wisconsin Power & Light Company, Appellant, vs.
Public Service Commission, Respondent.

*April 30—June 2, 1936.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

For the respondent there was a brief by the *Attorney General, H. T. Ferguson,* assistant attorney general, and *Alvin C. Reis,* chief counsel for the Public Service Commission, and oral argument by *Mr. Ferguson.*

WICKHEM, J.   The facts in this case are not in dispute. On and after October 20, 1932, plaintiff operated as a public utility for the furnishing of electric light and power in the village of Fall River under an indeterminate permit resulting from a franchise granted subsequent to July 11, 1907, to a predecessor in interest of plaintiff.   On this date, the village board of Fall River adopted the following resolution:

"The village board of the village of Fall River, Wisconsin, does resolve as follows: Whereas, the village board is of the opinion that the public interests will be served by the purchase of the electric plant and equipment situated in the village of Fall River and now owned by the Wisconsin Power & Light Company.

"Now, therefore, it is resolved: That the village of Fall River acquire said plant and equipment.

"It is further resolved: That the purchase price of said utility after it shall be determined shall be paid by issuance of public utility mortgage bonds to be issued under the provisions of section 66.06 (9) (b) of the Wisconsin Statutes."

Notice of the election read as follows:

"Notice of Referendum Election Upon the Acquisition of Public Utility Property.

"Take notice that a referendum election will be held at the general election to be held on the 8th day of November,

1932, at the village of Fall River, Wisconsin, to determine the question as to whether the village of Fall River shall acquire the electric plant and equipment of the Wisconsin Power & Light Company now operating in said village pursuant to a resolution of the village board of said village approved on the 20th day of October, 1932, providing among other things that the purchase price of said utility plant and equipment shall be paid by the issuance of public utility mortgage bonds to be issued under the provisions of section 66.06 (9) (b) of the Wisconsin Statutes.

"The polling places in said village are as follows, and will be open from —— a. m. to —— p. m. on said day."

The question submitted to the voters at the election held November 8, 1932, was as follows:

"Shall the electric plant and equipment of the Wisconsin Power & Light Company now operating in the village of Fall River be acquired by the village?"

At the election there were cast one hundred twenty-three votes in favor of the resolution and thirty-four votes against it. Thereupon, notice of the result of this election was given by the village to the Public Service Commission and the plaintiff company in compliance with the terms of sec. 197.02, whereupon the commission proceeded to determine the just compensation to be paid for the taking of the company's property. A hearing was had on November 27, 1933, and on February 5 and 6, 1934. On July 23, 1934, the defendant commission made findings and an order fixing the sum of $9,500 as compensation for the taking of the property described in the order. Thereafter, on September 25, 1934, after a rehearing, the commission made an order modifying in certain respects the order of July 23, 1934. Thereupon plaintiff brought this action in the circuit court for Dane county to vacate and set aside the order. The case involves the validity and effect of the election heretofore described. Plaintiff contends that the resolution of the village board

and notice of election indicate that the proceedings were under sec. 66.06, Stats., that this section deals with the purchase of property from an existing utility and not with its acquisition as a public utility under ch. 197, Stats.; and that the election was either void for want of a previous agreement or contract with the utility for its purchase or ineffective to do more than authorize such a contract; and that it did not vest the Public Service Commission with jurisdiction to proceed under the provisions of secs. 197.01 to 197.05, inclusive. These contentions require a consideration of the statutes applicable.

Sec. 197.01 (3), Stats 1931, provides:

"Any municipality shall have the power, subject to the provisions of chapters 196 and 197, to acquire the property of any public utility, wheresoever situated, actually used and useful for the convenience of the public; provided, that in acquiring any property outside of Wisconsin, such property must have been used exclusively by such public utility for furnishing heat, light, water and power to such municipality."

Sec. 197.02, Stats. 1931, provides:

"*Action by municipalities to acquire utility.* If the municipality shall have determined to acquire a plant operated under an indeterminate permit provided in section 196.55, by a vote of a majority of the electors, such municipality shall bring an action in the circuit court against the public utility for an adjudication as to the necessity of such taking by the municipality. Unless the parties waive a jury, the question as to the necessity of the taking of such property by the municipality shall be submitted to a jury."

Sec. 197.03, Stats. 1931, provides:

"*Indeterminate permit; notice.* If the municipality shall have determined to acquire an existing plant in the manner provided in section 197.02, and the public utility owning such plant shall have consented to the taking over of such plant by the municipality by acceptance of an indeterminate permit as provided herein, or, in case such public utility shall

not have waived or consented to such taking, if the jury shall have found that a necessity exists for the taking of such plant, then the municipality shall give speedy notice of such determination and of such consent or such finding to the public utility and to the commission."

Sec. 197.05 (1), Stats. 1931, provides:

"The commission shall thereupon set a time and place for a public hearing upon the matters of the just compensation to be paid for the property of such public utility, wheresoever situated, actually used and useful for the convenience of the public, and of all other terms and conditions of the purchase, and shall give to the municipality and the public utility interested, not less than thirty days' notice of the time and place when and where such hearing will be held, and such matters considered and determined, and the municipality shall publish such notice once a week for not less than three successive weeks in at least one newspaper of general circulation printed in the English language and published in the county in which such public utility is located."

Sec. 66.06 (8), Stats. 1931, provides:

"*Acquisition.* (a) Any town, village or city may construct, acquire or lease any plant and equipment located within or without the municipality, and including interest in or lease of land, for furnishing water, light, heat, or power, to the municipality, or to its inhabitants or for street railway purposes; . . . and the board or council may at any time agree with the owner or owners of any public utility or utilities as to the agreed value thereof, and to contract to purchase or acquire the same hereunder at such value, upon such terms and conditions as may be mutually agreed upon between said board or council and said owner or owners.

"(b) A resolution, specifying the method of payment and submitting the question to a referendum, shall be adopted by a majority of all the members of the board or council at a regular meeting, after publication at least one week previous in the official paper.

"(c) The notice of the referendum shall include a general statement of the plant equipment or part thereof it is proposed to acquire or construct and of the manner of payment.

"(d) Referendum elections under this subsection shall not be held oftener than once a year."

Sec. 66.06 (9), Stats. 1931, provides:

"*Method of payment.* (a) Any town, village, or city, owning or acquiring any public utility may provide payment for the same, or any part thereof, and for necessary additions and improvements, from the general fund, or from the proceeds of either municipal bonds, mortgage bonds, or mortgage certificates.

"(b) Where payment is provided by mortgage bonds, the term 'public utility' shall include street railways, and the payment shall be in the manner following:

"1. The board or council shall issue and sell bonds bearing interest at a rate not exceeding six per centum per annum, payable annually or semiannually, executed in such manner and payable at such times not exceeding forty years from the date thereof, and at such places, as the board or council of such town, village or city shall determine, which bonds shall be payable only out of the said special redemption fund. . . . Each such bond shall state plainly upon its face that it is payable only from the special fund, naming the said fund and the ordinance creating it and that it does not constitute an indebtedness of such town, village or city. . . ."

Under sec. 66.06, the statute contemplates the purchase by voluntary agreement of a plant or equipment for furnishing water, light, and power to the municipality or to its residents. It is contemplated that the value of the property purchased shall be determined, not by the Public Service Commission, but by negotiation and ultimate agreement between the municipality and the utility. The subject of the purchase is not limited, as in sec. 197.01, to property actually used and useful for the convenience of the public, but includes "any plant and equipment . . . for furnishing water, light, heat, or power, to the municipality, or to its inhabitants." The section requires that a resolution be adopted by the board specifying the method of payment and calling for a referendum, and that the notice of referendum shall

include a general statement of the plant or part thereof which it proposed to acquire together with the manner of payment.

Sec. 66.06 (9) (a) and (b) 1, Stats. 1931, authorizes payment of the purchase price from the proceeds of municipal bonds or mortgage bonds, and provides that indebtedness created by mortgage bonds issued pursuant to this section shall not be considered an indebtedness of such municipality or included in arriving at the constitutional debt limitation. It is required that these bonds be payable only out of a special redemption fund; that each bond shall so provide, in addition to a statement that it does not constitute an indebtedness of the municipality. Pars. (c) and (d) of sub. (9) of sec. 66.06 prescribe the procedure for payment "where payment is provided by mortgage bonds."

On the other hand, sec. 197.01 and following sections contemplate, first, a vote by the electors evidencing the determination to acquire so much of the property of a utility as is actually used and useful for the convenience of the public; thereafter, the bringing of an action in the circuit court against the utility to establish the necessity for such taking, unless the public utility by the acceptance of an indeterminate permit has consented to the taking. Upon a jury finding that a necessity exists, or in the event that there is no requirement for such finding, the commission is authorized by the terms of sec. 197.05 to set a time and place for public hearing to determine the just compensation and the terms and conditions of the purchase.

It is contended by defendant that the portion of the resolution and notice proposing to pay for the utility by the issuance of mortgage bonds under sec. 66.06 (9) (b) is mere surplusage, especially in view of the fact that the ballot contained no description of the manner of payment, and that the election must be treated as a determination to acquire the property sufficient to warrant the operation of secs. 197.01

to 197.05, inclusive. It is claimed that sec. 66.06 contemplates that prior to the referendum there shall have been a contract or agreement between the utility and the municipality to purchase, and that under the doctrine of *Janes v. Racine,* 155 Wis. 1, 143 N. W. 707, there should be nothing left to do when the referendum is held but to approve the contract to purchase; that since the record discloses no previous contract, it is fair to conclude that the village board intended to present to the voters the question of acquiring the property under secs. 197.01 to 197.05, but with the possibly erroneous assumption that the property so acquired could be paid for under the provisions of sec. 66.06 (9) (b).

It is also contended that there is nothing in the statutes to indicate that a municipality may not finance under sec. 66.06 (9) (b) even if the proceedings to acquire were under sec. 197.01. We conclude that defendant's position cannot be sustained. Both resolution and notice of election clearly specify that payment is to be from the proceeds of bonds which will not be general obligations of the village, but a mere lien upon the plant acquired. This is a matter so vital to a proper consideration of the merits by voters that the resolution and notice of election would be wholly misleading if treated as a submission under sec. 197.01 unless the privilege of issuing such bonds as are described in sec. 66.06 (9) (b), (c), and (d) is actually available to the municipality making an acquisition under sec. 197.01. That it is not is indicated by the decision in *Janes v. Racine, supra,* in which it was held that secs. 66.06 and 197.01 provide for separate, distinct, and wholly self-contained procedures for acquiring utilities. The court there says:

"Ch. 665 [now sec. 66.06 (8) (a) to (c)] furnishes in itself a complete procedure for acquiring a public utility in cases where it is applicable, and so does the general public utility act. Neither refers to the other. . . .

"A careful study of chapter 665 leads to the conclusion that the primary purpose of its enactment was to enable cities to construct or purchase plants by the issue of mortgage certificates. Bonds and cash were also included to make it more elastic. It seems peculiarly adapted to the construction or acquisition of plants under subs. 1 and 2 of sec. 1797m—79 [now 197.01], which provide for the construction, equipment, and operation of a plant by a municipality, and the purchase of any part of any plant by an agreement with a public utility, respectively. Both deal with situations where the amount to be raised can be definitely ascertained. The procedure of the general Public Utility Act seems more applicable to the acquisition of a plant under subs. 3 and 4 of said sec. 1797m—79, which provide, respectively, for the acquisition of a plant by condemnation and by purchase pursuant to the Public Utility Law, where the amount to be raised cannot be definitely ascertained until long after the municipality is required to vote on the subject."

In view of the fact that the methods prescribed by the two sections are separate, distinct, and mutually exclusive, we are of the opinion that the method of financing prescribed in sec. 66.06 is applicable to an acquisition by purchase only. The fact that the resolution and notice of election specify , this manner of payment gives rise to a strong inference that the board was proceeding under sec. 66.06, especially in view of the fact that the resolution and notice would be grossly misleading to the voters if any other presumption were to be indulged in. A voter who was entirely willing that the village purchase the property, provided no increase of the village indebtedness would result, might entertain an entirely different opinion were this not the fact. Further than this, the proposal is not to purchase such property as is actually used and useful for the convenience of the public, but to purchase the plant and equipment of plaintiff company. This is more indicative of procedure under sec. 66.06 (8) than

under sec. 197.01. The foregoing results in the conclusion that the proceedings were under sec. 66.06 and do not vest the Public Service Commission with any jurisdiction to proceed to establish the compensation, terms, and conditions of the acquisition.

Whether the proceedings under sec. 66.06 (8) and (9) are valid we do not find any occasion here to determine, since the sole question is whether the proceedings were a sufficient foundation for the order of the commission now under review.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment vacating the order of the Public Service Commission.