WOODKE, Appellant, vs. PROCKNOW and others, Respondents.

*September 8—October 7, 1941.*

For the appellant there was a brief by *Philip F. La Follette* and *Roberts, Roe & Boardman,* all of Madison, and oral argument by *W. Wade Boardman.*

*G. D. Gaynor* of Plymouth, for the respondents William Procknow and Earl B. Whiting.

For the respondent C. A. Straubel Company there was a brief by *Nicholson, Snyder, Chadwell & Fagerburg* of Chicago, Illinois, and *O'Kelliher & Martineau* of Oconto, attorneys, and *Dewey F. Fagerburg* of counsel, and oral argument by *Mr. Fagerburg.*

FRITZ, J.    This appeal is in an action brought by the plaintiff, Edward A. Woodke, Jr., for the purpose of having a declaratory judgment as to rights and obligations under sec. 100.06, Stats., and a contract made thereunder between Earl B. Whiting and C. A. Straubel Company, and a consent by William Procknow to act as trustee for certain producers of milk.   Whiting is the operator of a cheese factory; C. A. Straubel Company is a cheese dealer; and Procknow is a milk producer and the trustee under the contract to receive for the use of himself and all other producers, including Woodke, who deliver milk to Whiting's factory, the proceeds of cheese made of their milk by Whiting and sold to the

Straubel Company. Briefly stated, the facts essential on this appeal are as follows.

At Whiting's factory, which serves practically all the farmer milk producers in the neighborhood, the practice and method of operation (which is similar to that of many cheese factories in Wisconsin) is that upon the producer patrons delivering their milk at the factory it is pooled and manufactured into cheese and sold by the factory operator, who is to receive certain compensation per pound for the cheese manufactured and sold. This compensation is deducted from the proceeds of the sale and the balance thereof is distributed among the producers in proportion to the pounds of butter fat delivered by each during the period for which payment is made. In the conduct of these operations the producers are associated voluntarily without any articles of organization or by-laws. An annual meeting of producers is customarily held upon notice posted several days in advance upon the bulletin board of the factory. At this meeting the producers may attend and participate in the determination of policies for the operation of the factory and the election of a treasurer to make the collections, disbursements, and distribution. On February 3, 1940, pursuant to such a notice given by Whiting to the producers, who delivered milk to his factory, a meeting was held at which twenty-six out of the forty-eight patrons were present. By a majority vote they adopted a resolution by which Procknow was appointed as trustee for the producers delivering milk to Whiting's factory to receive payment for dairy products sold from the plant; to make payment to producers on regular payment dates as shown by the patron's statement; and to pay Whiting, as operator of the plant, an agreed compensation or commission. The meeting also authorized Whiting to sell the cheese when made. On February 7, 1940, Whiting entered into a contract with the

Straubel Company, which so far as here material reads as follows:

"Whereas section 100.06, Wisconsin Statutes, provides:

" 'No person shall operate a dairy plant or receiving station . . . without the operator or other person liable to pay for dairy products first having on file bond or other security with the department as required by this section.'

"Now, therefore, in compliance with subsection 4 of said section 100.06, it is hereby agreed by and between C. A. Straubel Company, a licensed dairy products dealer of Green Bay, Wisconsin, party of the first part, and Earl B. Whiting, of Gillett, Wis., R. 1, an operator of a dairy plant, party of the second part:

"Witnesseth: That to enable the party of the second part to secure a dairy plant license from the state department of agriculture and to assure payment to the producers for the milk and cream delivered by them to the party of the second part, the party of the first part hereby promises and agrees that if and when the party of the first part purchases dairy products from the party of the second part, the party of the first part will pay the purchase price thereof directly to said producer or to William Procknow, of Gillett, Wis., R. 1, a person designated by said producers to receive said payments in trust for their use.

"Party of the second part hereby consents and authorizes the party of the first part to make payment as heretofore set forth, and also consents to and approves the appointment of said William Procknow of Gillett, Wisconsin, as trustee to receive said payments for the use of said producers. Party of the second part further agrees that he will sell dairy products only to licensed dairy product dealers who have signed this or similar contracts and that he will file with the state department of agriculture certified copies thereof and notify the department in writing of any cancellation."

At the foot of the contract Procknow on February 7, 1940, signed a consent to act as trustee, which reads as follows:

"I, William Procknow, the trustee named in the above contract, hereby consent to act as such trustee for the producers delivering milk or cream to Earl B. Whiting, operator of Town Line Factory, party of the second part, and agree to administer said trust in accordance with said contract, and to make payment to the producers for all milk and cream delivered by said producers to the party of the second part on the regular payment dates so shown by the patron's statement and any balance remaining in my possession after making said payments to be returned to the party of the second part."

After February 3, 1940, Woodke delivered about two per cent of the milk received at Whiting's factory. On February 14th, two hundred twenty-seven pounds of cheese produced from milk, including Woodke's, received from producers between the 3d and 10th of February were sold by Whiting to Straubel Company for $36.32. On February 15th Woodke notified Procknow that he demanded payment for milk which he delivered prior to that sale of the cheese; that he denied Procknow's right to receive compensation from the proceeds of cheese sales; and that he claimed a lien on the cheese until he was paid for the milk delivered to Whiting's factory. Woodke also notified Straubel Company that he claimed such lien. Since then Woodke has continued to so deliver his milk to Whiting's factory and it is necessary for plaintiff to so continue or suffer considerable expense and loss by delivering it elsewhere. Procknow has rendered services to the patrons of the factory and Whiting pursuant to his election as trustee under the resolution adopted February 3, 1940. Upon these facts the court concluded that Straubel Company has the right to purchase cheese from Whiting pursuant to the contract of February 7, 1940; that Whiting was duly authorized by the producers' association, of which Woodke is a member, to sell such cheese; that payment of the purchase price for the cheese to Procknow, as trustee, constituted full payment

therefor, and after such payment Woodke has no lien upon the cheese in the Straubel Company's hands; that no rights of the plaintiff were impaired by the sale of the cheese by Whiting to the Straubel Company; and that his complaint must be dismissed. Thereupon the court entered judgment dismissing the complaint. Woodke appealed.

On his appeal Woodke contends that as a producer who delivered milk to Whiting as the operator of a cheese factory, licensed under sec. 100.06 (4), Stats., Woodke received a lien upon the cheese produced in part from such milk. He argues that the legislative object under sec. 100.06, Stats., is to insure payment to the producer for his milk; that when a dairy plant operator, in order to obtain a license under sec. 100.06, Stats., files as security a contract made under the provision in sub. (4) thereof, which reads,—

"By which payment for the products is secured directly to the producers of the milk and cream, or to their use in such manner as to assure its delivery to such producers, from anyone having security on file under this section . . . in which case the products and proceeds shall be in trust,"—

then under this provision and the contract the title to the cheese remains in the producer; that upon the purchase thereof by a dealer the cheese as well as the proceeds thereof are held in trust; that until the producer receives payment for his milk he has an undivided and proportionate lien upon the cheese as well as the proceeds thereof; and that this lien is prior to or a limitation upon the interest of the dealer. Woodke's contention cannot be sustained.

Under the provisions of sec. 100.06 (4), Stats., the trust created by the contract made between Whiting and Straubel Company and the consent by Procknow to act as trustee, Whiting, as the factory operator, was entitled to make sales of the cheese to Straubel Company in accordance with the provision in the contract for payment of the purchase price

thereof by C. A. Straubel Company either "directly to said producer or to William Procknow . . . a person designated by said producers to receive said payments in trust for their use." There is no provision in either sub. (4) of sec. 100.06, Stats., or in the contract which can be said to expressly create or reserve a lien in favor of each producer upon either the cheese or the proceeds upon the sale of the cheese. The only term in either the contract or the statute upon which Woodke seeks to base his claim to a continuing lien upon the cheese after the sale thereof to C. A. Straubel Company is the concluding clause, "in which case the products and proceeds shall be in trust," in the provision in sec. 100.06 (4), Stats., by which the state department of agriculture is authorized to accept as security contracts to secure payment directly to producers for products delivered to operators. Even if there could be deemed to be some ambiguity in that clause, it cannot reasonably be assumed in the construction thereof that the legislature intended that a dealer should be required to pay in advance for cheese purchased from a factory and continue to hold it until after the trustee has completed the mechanics involved in ascertaining and distributing to each producer his proportionate share of the purchase price theretofore paid over to the trustee by the dealer. If a lien of such character was intended it cannot be reasonably deemed to have been created by the language used in the clause in question, which is far too vague and indefinite to express such intention. In the absence of some clear and definite provision expressing the intention to create such a lien, and some workable directions as to the mechanics by which such a lien against the products purchased by a dealer under an authorized contract could be released and the dealer promptly apprized of such release or enabled to readily ascertain that fact, it is but reasonable to assume that the legislature did not intend that there was to be a lien against such products which would continue in effect beyond the time of the payment of the

purchase price to the trustee. On the other hand, the logical and reasonable construction of the language in the statutory clause in question and in the provisions of the contract is that the products are to be held in trust until they are paid for by the dealer; that such payment may be made to the trustee, instead of directly to the producers; and that the proceeds of the sale upon payment thereof by the dealer are to be held in trust by the trustee to whom they have been paid to assure the payment by the trustee to each producer of his proportionate share thereof.

Woodke contends furthermore that the lien on the cheese, which he claims arises under sec. 100.06 (4), Stats., in favor of each producer whose milk was used in making the cheese, continues until he himself has received payment or is assured of payment; and that, even though the contract made between the factory operator and the dealer with the approval of the state department of agriculture may purport to permit the payment to the trustee, it does not purport to relieve the dealer from responsibility until payment is actually received by the producer himself. In this connection plaintiff argues that the security under a contract, which is made under sec. 100.06 (4), Stats., to dispense with the other forms of security prescribed in sec. 100.06, Stats., must be the equivalent thereof to assure the delivery of the proceeds to the producers; and that mere payment to a third person cannot relieve the dealer from the responsibility for assuring delivery of the payment to the producers. This contention and argument fails to give due consideration to the provision in sec. 100.06 (4), Stats., that "the *department may accept* as such security, when practicable, and to the extent they are adequate, *contracts by which payment* for the products *is secured* directly to the producers . . . *or to their use* in such manner as to assure its delivery to such producers." In so far as this provision vests the department of agriculture with authority to accept as such security contracts by which

payment is secured "to their [producers'] use" in such manner as to assure its delivery to such producers, it is evidently contemplated or at least implied that there may be thus created a trust relationship on behalf of the producers under which the dealer can discharge the obligation to pay for the cheese by his making payment thereof to the trustee for the use of the producers. The statute does not prescribe by whom or in what manner the trustee is to be selected. However, in this case, at the meeting on February 3, 1940, of which all producers had notice and in which all could have participated, there was adopted the resolution that Procknow was "appointed trustee for the producers delivering milk and cream to Town Line Cheese Factory," and was authorized as "said trustee to receive payment for dairy products sold from said plant and to make payment to said producers on the regular payment dates as shown by the patron's statement and to pay said plant its agreed compensation or commission." He does not appear to have been selected by either Whiting or Straubel Company, or to have been considered to be the latter's trustee or representative. Neither does there appear to have been any objection or protest to Procknow's appointment or qualifications as such trustee by Woodke or any producer during the time Woodke delivered the milk which was used in making cheese which Whiting sold to Straubel Company on February 14, 1940. Under these circumstances, in so far as the parties and transactions involved herein are concerned, Straubel Company must be considered authorized to pay the entire proceeds of the sale of February 14th, including Woodke's proportionate share thereof, to Procknow as trustee for the use of Woodke and all other producers entitled to share therein. If Woodke desired to question the responsibility of Procknow for the delivery of Woodke's share to him, or have some other assurance of such delivery, he should have asserted his claims in these respects prior to the approval and acceptance of the contract of February 7, 1940, by the

state department of agriculture, and refrained from delivering his milk to Whiting's factory, where he knew it would be pooled with that of the other producers for the purpose of making cheese to be sold as provided in the contract.

Procknow, in his prayer for declaratory relief, requested that he be adjudged to be entitled to deduct from the proceeds of the sale a fee as trustee for the reasonable value of his accounting services and the responsibility involved. The court found upon the facts stipulated that Procknow rendered services to the patrons as trustee, but did not make any conclusion of law or adjudication on that subject. Woodke contends that each milk producer should receive his share of the proceeds free from any claim for compensation for the services of the trustee. This contention cannot be sustained. As the trust in question is a business trust, created primarily for the use and benefit of the producers and for solely their protection, there is applicable the rule that where there is no express provision for compensation set out in the trust instrument, an agreement will be implied to pay the trustee a fair and reasonable compensation out of the trust funds for services which he renders to the trust, and which are of such a nature that they could not reasonably be expected to be performed without compensation. *Mitchell v. Ormond,* 282 Mass. 107, 184 N. E. 471; *Trust No. 5522 and Trust No. 5644, Bellehurst Syndicate v. Comm'r of Internal Revenue* (9th Cir.), 83 Fed. (2d) 801; Restatement, Trusts, p. 740, § 242; p. 742, § 242, comment *c;* p. 778, § 250, comment *g;* 12 C. J. S. p. 840, § 26.

It follows that the court's conclusions of law must be affirmed, with the exception that the court should not have concluded that the complaint must be dismissed. In addition, the court should have concluded that the trustee is entitled to deduct from the trust fund fair and reasonable compensation for his services, and also for expenses necessarily and reasonably incurred by him in executing the trust. However, in-

stead of entering judgment pursuant to the conclusion that the complaint must be dismissed, judgment should have been entered adjudicating declaratory relief in accordance with the other conclusions of law; and in this respect the judgment entered is modified with directions to enter judgment for declaratory relief in accordance with the court's other conclusions of law and the additional conclusion stated above in relation to the compensation of the trustee.

*By the Court.*—Judgment modified with directions to enter judgment as provided in the opinion, and affirmed as modified. No costs are to be taxed by any of the parties, but the clerk's fee shall be paid by appellant.