STATE EX REL. MARTIN, Attorney General, Respondent, vs.
CITY OF JUNEAU, Appellant.

*September 12—October 7, 1941.*

For the appellant there was a brief by *Howard W. Hilgendorf,* city attorney, and *Wilkie, Toebaas, Hart, Kraege &*

*Jackman* of Madison of counsel, and oral argument by *Mr. Hilgendorf* and *Mr. F. Halsey Kraege.*

For the respondent there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

ROSENBERRY, C. J. We shall first consider what questions are raised by the demurrer to the answer of the defendant city. Such authority as the state board of health and the state committee on water pollution have in respect to the matters here under consideration is conferred upon them by ch. 144, Stats. The order in question was signed by the state board of health and the committee on water pollution. With respect to the orders made by the state board of health, sec. 144.10, Stats., provides:

"An owner may elect to arbitrate or may bring action against the board in the circuit court for Dane county to determine the necessity for and reasonableness of any order of the board."

With respect to orders made by the state committee on water pollution, sec. 144.56, Stats., provides how orders of the committee may be reviewed or the questions with respect thereto arbitrated. The city of Juneau did not pursue the statutory remedies. Because of its failure to avail itself of the remedies provided by statute in this class of proceedings, it is considered that in this action to enforce the performance of the order, the city is foreclosed from raising any questions except, (1) the validity of ch. 144, Stats., and (2) whether the state board of health and the state committee on water pollution acted within the powers conferred upon them by statute.

This court has repeatedly held that where a specified method of review is prescribed by an act creating a new right or conferring a new power, the method so prescribed is exclusive and if review is sought that method must be pursued. *State*

*ex rel. Attorney General v. Fasekas* (1937), 223 Wis. 356, 362, 269 N. W. 700; *Corstvet v. Bank of Deerfield* (1936), 220 Wis. 209, 263 N. W. 687.

Upon this appeal the city contends that ch. 144, Stats., is invalid and unconstitutional on the following grounds: (1) The terms and provisions of the said statutes are vague and indefinite and incapable of enforcement. (2) The powers given in and by said statutes to said board and committee are and constitute an unlawful delegation of legislative power. (3) The powers given in and by said statutes to said board and committee are and constitute an unlawful delegation of judicial power. (4) That said statutes are unreasonable, arbitrary, and oppressive.

The city relies here upon *Dowling v. Lancashire Ins. Co.* (1896) 92 Wis. 63, 65 N. W. 738; *State ex rel. Adams v. Burdge* (1897), 95 Wis. 390, 70 N. W. 347, and similar cases from other jurisdictions.

We have recently considered the developments in the field of administrative law since the decision of *Dowling v. Lancashire Ins. Co., supra,* in so many cases that it would be a work of supererogation for us again to review the cases. This change in the law with respect to the delegation of powers conferred by the constitution upon legislative and judicial bodies has come in response to the demands of social imperatives. While all authorities agree that there are limitations upon the power to delegate, it is clear that those limitations have not been exceeded by the provisions of ch. 144, Stats.

Under our system of constitutional law municipal corporations and *quasi*-municipal corporations are arms of the state created for the purpose of exercising within their boundaries those powers conferred upon them by the legislature and discharging such duties as the state may prescribe. In no field is the power of the state broader or more general than in the protection and promotion of the public health,—a matter which concerns not only the state in its corporate capacity but

every individual within it. It is principally because municipalities are indifferent to the increasing demands made upon them by our advancing civilization in the field of education, transportation, and health that local bodies have been so largely divested of power and been made subject to legislative regulation and supervision by state authority. The case which we are considering is a glaring instance of the disregard of public welfare in the interest of objecting taxpayers. This matter was dealt with in *Van Gilder v. Madison* (1936), 222 Wis. 58, 267 N. W. 25, 268 N. W. 108. It is not necessary to enlarge upon it in this case. In the performance of its duty to protect the public health the city of Juneau is not acting in a private or proprietary capacity but purely in a governmental capacity in the discharge of one of the highest duties it owes to its citizens. A municipal corporation has no privileges or immunities under the federal constitution which it may invoke against state legislation affecting it. *Williams v. Baltimore* (1933), 289 U. S. 36, 53 Sup. Ct. 431, 77 L. Ed. 1015. The authority of the legislature over a municipal corporation is supreme, subject, however, to such limitations as may be prescribed by the state constitution. *Shirk v. Lancaster City* (1933), 313 Pa. 158, 169 Atl. 557, 90 A. L. R. 688.

Sec. 1 of art. XI of the constitution of Wisconsin provides:

"Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act, except for municipal purposes. . . . All general laws or special acts enacted under the provisions of this section may be altered or repealed by the legislature at any time after their passage."

While it is provided by section 3 of the same article that cities and villages organized pursuant to state law are empowered to determine their local affairs and government subject only to the constitution and such enactments of the legislature of state-wide concern, there can be no question but

that the promotion and protection of public health is a matter of state-wide concern. It is clear that the provisions of our constitution only slightly restrict the power of the legislature over municipal corporations and those restrictions apply only to local affairs. Municipalities obtain no vested right under an act of the legislature, the constitution reserving to the legislature the power to repeal or alter any such act.

Counsel for the defendant in the presentation of this case both in the briefs and upon oral argument gave no consideration to the difference between a municipal corporation and a private citizen as respects the application of the constitutional guaranties. For that reason. much of the authority cited and the argument put forth are beside the point. In an effort to establish its contention that the statute is invalid because it is indefinite and uncertain the appellant city argues that sec. 144.53 (5), Stats., contains no standard or guide to govern the actions of the state committee on water pollution. The subsection is as follows:

"144.53 *Duties of committee on water pollution.* It shall be the duty of the committee on water pollution and it shall have power, jurisdiction and authority: . . .

"(5) To issue special orders directing particular owners to secure such operating results toward the control of pollution of the surface waters as the committee may prescribe, within a specified time. If such results are not secured in the specified time, the committee may direct the owner to use or adopt designated systems, devices and methods for handling industrial wastes, refuse and other wastes within a specified time."

Among other things the appellant city complains of the fact that because the words "operating results" are used and not specifically defined in the act, the statute is invalid because indefinite. Inasmuch as the whole purpose of secs. 144.51 to 144.57, Stats., is to prevent the—

"pollution, the contamination or rendering unclean or impure, injurious to the public health, harmful for commercial or

recreational use, deleterious to fish or animal or plant life of the waters of the state," sec. 144.51 (4)—

it would seem to be reasonably plain that an operating result was one which prevented pollution of the lakes, rivers, and watercourses within the state. Other specific objections are of the same general character and need not be separately considered.

This section gives the committee on water pollution authority to adjust its orders so as to achieve the statutory purpose by some adequate means. The procedure is purely administrative. It is on the executive side, and while the committee or state board of health may in certain instances exercise *quasi-*judicial power, what the statute confers upon them is authority to promote public health. The pollution of the waters of the state is as a matter of common knowledge inimical to public health. If in a particular case the orders either of the state board of health or the state committee on water pollution are improper, the remedy is by a review in the manner prescribed by statute. Making an unauthorized order does not render the statute unconstitutional nor is the statute in its terms indefinite and uncertain. The discretion vested in the state board of health and in the state committee on water pollution is not arbitrary, it is subject to court review, and the rights of all parties are fully protected.

In *Kreutzer v. Westfahl* (1925), 187 Wis. 463, 204 N. W. 595, the court had under consideration the constitutionality of the so-called Blue Sky Law. By the terms of that law, sec. 183.29 (3), Stats. 1923, provided:

". . . If, from such examination, the commission shall be satisfied of the good business reputation of the applicant and of its officers or members, if any, and that the general business methods of the applicant are fair and equitable . . . the commission shall issue a certificate," etc.

This law was attacked on the ground because of its indefiniteness and uncertainty, and that it conferred an arbitrary power and discretion upon the commission. Disposing of this question, the court said (p. 487) :

"The legislature itself would have the power to ascertain such facts as under this statute are left to the commission, but from the nature of things such ascertainment would be impracticable if not impossible. Having this power, it may be delegated to administrative tribunals. The authority thus given is not legislative in its nature, but is the exercise of ministerial and executive duties under legislative sanction. . . . Necessarily rather broad powers are conferred on commissions of this kind, but it is not to be presumed that persons of high official rank will exercise those powers in a partial or unfair manner, or in such a way as to hamper legitimate business."

The provisions of ch. 144, Stats., are more definite and detailed than were the provisions of the section there under consideration. See also *Olson v. State Conservation Comm.* (1940) 235 Wis. 473, 293 N. W. 262.

Under the provisions of ch. 144, Stats., neither the state board of health nor the state committee on water pollution is obliged to postpone action until the health of a community is impaired or some citizen has died as a result of the pollution of the water of the state. The conditions which lead to such a result are well and scientifically known, and the power of these bodies extends to prevention as well as to the remediation of conditions which are destructive of the public health.

We find no basis for the contentions made by the appellant city that the state board of health and the state committee on water pollution have acted beyond and without the powers conferred upon them by ch. 144, Stats. Under the statute the board may order, where it appears that a municipality is cooperating, that the municipality may prescribe its own plan for abating the evil complained of (sec. 144.53 (4), Stats.),

but where, as here, there is entire lack of co-operation and active opposition under the statute the board is clearly empowered to prescribe definitely what shall be done. The legislature apparently assumed that when the fact that conditions deleterious to the health of the public were called to the attention of the local authorities, they voluntarily would proceed to remedy them.

The statute being valid, the boards having acted within their statutory powers, the trial court properly sustained the demurrer to the answer.

*By the Court.*—The order appealed from is affirmed.