DENNING and another, Appellants, vs. CITY OF GREEN BAY and others, Respondents.

*October 14—November 8, 1955.*

For the appellants there were briefs by *Christ T. Seraphim*, attorney, and *Schroeder, Sheets & Schroeder, Robert W. Schroeder*, and *Clyde E. Sheets* of counsel, all of Milwaukee, and oral argument by *Mr. Clyde E. Sheets, Mr. Robert W. Schroeder*, and *Mr. Seraphim*.

For the respondents there was a brief by *Clarence Nier*, city attorney, and by *Lines, Spooner & Quarles* of Milwaukee, for the Union Securities Corporation, and by *Everson, Ryan, Whitney & O'Melia* of Green Bay, for Chapel and Amundsen, and oral argument by *Mr. Nier, Mr. John C. Whitney, Mr. Charles B. Quarles*, and by *Mr. Laurence C. Hammond, Jr.*, of Milwaukee.

BROWN, J.  The city of Green Bay operates its own water-supply system.  It draws its water from various deep wells in the city which have become inadequate, and on August 18, 1953, the city council resolved to draw water from Lake Michigan which is some 26 miles distant from the city limits. Pursuant to appropriate resolutions of the common council,

city officers proceeded to obtain authority to do this from the public service commission of Wisconsin, to take bids for the construction of the pipe line, and to prepare and sell a bond issue of $5,700,000, "Water Works Mortgage Revenue Bonds." On October 21, 1953, defendants Chapel and Amundsen were notified that their bid was low and on December 15, 1953, the common council ratified and affirmed the award of the construction contract to them and repeated the affirmance on January 4, 1955. The preparation and sale of the bond issue was not completed until February 21, 1955. On that date the entire issue was sold and delivered to defendant Union Securities Corporation, and on the same date, pursuant to the order of the common council, the city comptroller certified on the construction contract that funds sufficient to meet its expense were available, as required by sec. 62.15 (12), Stats., and the formal contract was executed by the mayor and city clerk.

In the meantime, in November, 1953, opponents of the project filed petitions for a referendum on the subject and on February 11, 1954, by resolution, the common council directed a referendum election to be held on March 9, 1954, on the question of whether the city should construct a pipe line and other facilities to obtain Lake Michigan water and finance the same by revenue bonds. At this election the project was defeated. On August 17, 1954, the council directed another referendum to be held on September 14, 1954, to determine if the city should seek a new water source and, if so, whether it should go to the Fox river, Green Bay, or Lake Michigan for water. The questions on the ballot presented alternatives not only as to the source of supply but whether any new source should be obtained and the result of the election varies according to the interpretation placed on those votes which were cast against the proposal in general but also indicated a preference for one of the three sources.

For reasons stated later, it is unnecessary to make any interpretation.

About a month after the city had executed the formal contract for construction of the pipe line and had sold its revenue bonds, plaintiffs and appellants brought these two actions by which they ask a declaration that the construction contract and the bond issue are invalid. Trial was to the court, which made findings of fact that the construction of the pipe line constituted an addition to or an extension of already existing water facilities owned and operated by the city of Green Bay within the meaning of sec. 66.066, Stats. There were other findings relative to the technical sufficiency of the petitions for the first referendum and subsequent litigation directly concerning that subject. The trial court concluded that the petitions were legally insufficient and the result of the March 9, 1954, election was not binding on the city council. It is unnecessary to discuss questions arising from either referendum or the findings in respect to them because the evidence supports the finding that this project is an extension of or addition to Green Bay's existing water system and we agree with the trial court's conclusions of law which he stated as follows:

"5. That the common council of the city of Green Bay, is empowered under section 66.066, Wis. Stats., to issue mortgage revenue bonds and to enter into a contract for the construction of a pipe line which would be an addition to or an extension of the facilities of an already existing water utility without reference to a referendum; and that the resolutions and procedures of the common council of Green Bay in authorizing the Lake Michigan water project were pursuant to sec. 66.066, Wis. Stats.

"6. That section 10.43 of the statutes cannot be employed to modify the express statutory powers of the common council of the city of Green Bay."

Sec. 10.43, Stats., provides for direct legislation by popular vote upon measures submitted in accordance with specified requirements. It also declares that the proposal carried by the referendum shall not be amended or repealed within two years. Appellants contend that the referendum of March 9, 1954, was a proceeding under this statute and the rejection of the proposal to go to Lake Michigan for water must stand for two years. There is good reason to conclude that the referendum did not comply with the requirements of sec. 10.43, and that a municipal court decision that it did not is *res adjudicata* now. However that may be, the Lake Michigan project is an extension of and addition to the presently existing water system of the city of Green Bay and, as such, falls within the terms of sec. 66.066, whose pertinent provisions are:

"(1) Any town, village, city, or power district may, by action of its governing body, provide for purchasing, acquiring, leasing, constructing, extending, adding to, improving, conducting, controlling, operating, or managing a public utility from the general fund, or from the proceeds of municipal bonds, mortgage bonds, or mortgage certificates. The term municipality as used in this section shall include power districts. Any indebtedness created pursuant to subs. (2) to (4) shall not be considered an indebtedness of such municipality, and shall not be included in arriving at the constitutional debt limitation.

"(1a) Nothing herein shall be construed to limit the authority of any municipality to acquire, own, operate, and finance in the manner provided in this section, a source of water supply and necessary transmission facilities (including all real and personal property) beyond its corporate limits, and a source of water supply 30 miles beyond such limits shall be deemed to be within such authority."

In *Flottum v. Cumberland* (1940), 234 Wis. 654, 667, 291 N. W. 777, dealing with a change in the source of supply of electric power to a city-owned public utility, we said:

"The city having in this case owned and operated its own generating and distribution plant for many years, and being at the time of the issuance of the bonds the owner of its distribution system, we can see no reason why funds may not be raised for improving and adding to the existing system without submitting the matter to a referendum."

In the same case we also held that where the statute has prescribed the procedure, the electors may not demand the submission of a question which would modify the statutory authority. In the present action, the statute, sec. 66.066, confers authority for the *governing body* to provide, etc. The governing body of Green Bay acted under that authority. The later submission of the question to referendum and the result of the referendum are alike immaterial to control or modify the action. Accordingly, we conclude that, whether or not either referendum was initiated and conducted in a manner technically correct, its result merely advised the common council but did not control it.

Appellants submit that sec. 66.066 (1a), Stats., quoted *supra,* does not authorize the construction of this pipe line for a distance of 26 miles beyond the city limits because the word "construct," or one of like meaning, is not there. We think the words that are used are sufficient to empower the city to engage in and finance this extension and improvement of its water system in the manner now attempted.

Appellants submit that under sec. 62.06, Stats., a contract for the construction of water facilities may not extend over a period of more than one year unless certain conditions are met. Sec. 62.06 does not so provide and is doubtless cited by mistake. However, we find no comparable restriction under other numbers except in sec. 65.06 (1) which applies only to cities of the first class, of which Green Bay is not one. Appellants also submit that the contract is invalid because it is dated November 17, 1953, before funds to defray its expense could be certified available as provided in sec.

62.15 (12). This date was about the time that the city accepted the bid of Chapel and Amundsen. Funds were not then on hand or provided for but the contract was not executed on the part of the city until February 21, 1955, when the funds had become available and were so certified by the city comptroller. We find no illegality in this respect.

Many of appellants' contentions depend on an assumption that the city could not undertake this project by action of its governing body, and that the referenda were vital to the undertaking. Having rejected the assumption, we believe it is unnecessary to pursue these arguments into their dependent subdivisions.

The trial court's judgments simply dismissed the complaints and appellants submit that this does not comply with sec. 269.56 (1), Stats., which directs that the judgment shall declare the rights, etc., of the parties in actions where declaratory relief is demanded. Under this section we have held that it is improper for such a judgment to do no more than dismiss the complaint. *Northwestern Nat. Ins. Co. v. Freedy* (1930), 201 Wis. 51, 227 N. W. 952; *Woodke v. Procknow* (1941), 238 Wis. 422, 300 N. W. 173. The record does not show that the objection to the form of the judgment was ever presented to the trial court and no costs will be allowed appellants on account thereof. We think best, however, to follow our procedure in *Woodke v. Procknow, supra,* and affirm the trial court's conclusions of law, except those which direct the dismissal of the complaints. The judgments entered are modified with directions to enter judgment for declaratory relief in accordance with the court's other conclusions of law.

*By the Court.*—Judgments modified, with directions to enter judgment as provided in the opinion, and affirmed as modified. Respondents shall have their costs in this court.