L.P. VOIGT, Secretary, Department of Natural Resources
You have requested my advice regarding a problem confronting the Department of Natural Resources in its efforts to insure safe water supplies in municipalities. Your letter states that an incorporated municipality within Wisconsin lacks a public water supply system and that private wells in the municipality have tested unsafe bacterially in 30 percent of the samples taken. Your letter further states that the attorney representing the municipality has indicated to the Department his legal opinion that the municipality is powerless to construct a public water supply system in response to an order from the Department of Natural Resources absent *Page 524 
a referendum vote by the citizens authorizing such expenditure. He has further advised municipal officials that they could be personally liable for any such expenditure. Accordingly, you have requested a formal opinion on the following question:
"(1) Does s. 144.025 (2) (r), Wisconsin Statutes, empower the Department of Natural Resources to require a municipality to construct a public water supply system notwithstanding the provisions of s. 66.065, Wisconsin Statutes, requiring voter approval through a referendum?
"(2) May the Department proceed to require a municipality to construct a public water supply system if the residents of such municipality vote against such construction in a referendum?"
 I. POWER OF DEPARTMENT OF NATURAL RESOURCES TO ORDER MUNICIPALITY TO CONSTRUCT A PUBLIC WATER SUPPLY
The statutory provision whereby the Department has the power to issue an order against the municipality requiring construction of a public water supply is contained in sec. 144.025 (2) (r), Stats., the last sentence of which reads as follows:
"If the department finds that the absence of a municipal system orplant tends to create a nuisance or menace to health or comfort, it may order the city, village, town or town sanitary district embracing the area where such conditions exist to prepare and file complete plans of a corrective system as provided by s. 144.04, and to construct such system within a specified time." (Emphasis supplied)
The phrase "system or plant" as used in the above-quoted section is defined in sec. 144.01 (6). Stats., as follows:
"(6) `System or plant' includes water and sewerage systems and sewage and refuse disposal plants."
Section 144.01 (3), Stats., defines "water system" as follows: *Page 525 
"(3) `Waterworks,' or `water system,' all structures, conduits and appurtenances by means of which water is delivered to consumers except piping and fixtures inside buildings served, and service pipes from building to street main."
The above-quoted statutory provisions expressly authorize the Department to order municipalities to construct public water supply systems where the absence of such a system creates a "nuisance or menace to the health or comfort" of its citizens.
The Department's power to order the construction of facilities under sec. 144.025 (2) (r), Stats., was found to be a valid exercise of the police power in State ex rel. Martin. v. Juneau (1941), 238 Wis. 564,300 N.W. 187. Although that case involved an order requiring construction of sewage treatment facilities, it is clear that an order requiring construction of a public water system, based upon a finding that absence of a public water supply constitutes a nuisance or menace to health or comfort, would also be validly based on the police power.
 II. POWER OF MUNICIPALITIES TO CONSTRUCT WATER SYSTEMS
Public water systems, or waterworks, are one of the oldest types of public utility. Consequently, there is a surprising number of cases and statutes dealing with the power of a municipality to construct, acquire, operate, expand or finance public water systems.
The Wisconsin Supreme Court initially decided that cities had the power to construct waterworks as a part of the general police power, even though their charter contained no express provisions for the construction or operation of waterworks. In Ellinwood v. City of Reedsburg (1895),91 Wis. 131, 133-4, 64 N.W. 885, the court stated that:
"* * * It is not necessary to seek for an express delegation of power to the city to build a waterworks and electric lighting plant in order to determine whether such power exists, for the general power in respect to police regulations, the preservation of the public health, and the general welfare *Page 526 
includes the power to use the usual means of carrying out such power, which includes municipal water and lighting services.* * *"
This decision has been followed in several cases including Eau Clairev. Eau Claire Water Company (1909), 137 Wis. 517, 538, 119 N.W. 555, where it was held that the city can use general fund monies for the purchase of a waterworks absent specific charter restrictions, and Wonewocv. Taubert (1930) 203 Wis. 73, 233 N.W. 755, where villages were found to have the same police power authority to construct waterworks.
This authority was severely limited, however, by the poor financial resources of the cities. Most found it necessary to issue bonds in order to purchase or construct waterworks, and their bonding authority was limited both by the constitutional debt limit and by a legislative requirement that a referendum be held prior to bonding for the purpose of acquiring or constructing waterworks. See Connor v. Marshfield (1906),128 Wis. 280, 107 N.W. 639, for a discussion of the general statutory structure during the period.
Regarding the constitutional debt limitation, in 1921 the Supreme Court decided the case of State ex rel. Morgan v. Portage (1921), 174 Wis. 588,184 N.W. 376, which dealt with a situation similar to the instant opinion request. In that case, the City of Portage had been ordered by the railroad commission (predecessor to the Public Service Commission) to construct certain improvements in its city waterworks necessitated by the inadequacies of the existing service. The railroad commission ordered that the improvements be paid through the issuance of mortgage bonds, and the court held that such bonds create a municipal debt when applied to property already owned by the municipality. The court then held that the railroad commission did not have the authority to order the city to exceed its constitutional debt limitation. When the railroad commission argued that the order could be enforced because it was requiring the city to perform a municipal function created by an overwhelming public necessity, the court responded by holding that the city was acting in a proprietary capacity and not a *Page 527 
municipal capacity in that it was voluntarily engaging in the water utility business:
"* * * It must be borne in mind that the expenditure ordered and here in question does not pertain to a governmental function, but to a business the city is conducting in its proprietary capacity in which the city engages voluntarily. True, in the conduct of such business it can do nothing to the detriment of the public health, good order, and the general welfare. If it transgresses its legal duties in these respects it can be coerced to obey the law. It does not follow, however, that a city, in order to remedy an evil like the one the commission found exists in the city of Portage, can create an indebtedness in excess of the constitutional limitation. * * *" 174 Wis. at 596.
The Morgan case has been followed mainly for the proposition that the mortgage bond system of financing did not create a municipal debt for the initial purchase of municipal property, but did create a debt if applied to improvements or additions to existing municipally owned property. The above-quoted portion, however, relating to whether a city acts in a proprietary or governmental function vis-a-vis a public water supply has been implicitly overruled in a more recent decision.
In Froncek v. Milwaukee (1955), 269 Wis. 276 at 283, 69 N.W.2d 242, a case challenging the City of Milwaukee's authority to add fluorine to the water supply for purposes of improving dental health, the court came to the opposite conclusion of the court in the Morgan case without discussing that prior case. In adopting the decision of the trial court, which had held fluoridation was within the city's authority, the Supreme Court stated:
"He [the trial court] ruled that although a city may act in a proprietary capacity in owning and operating a water utility, the relation between the city and its inhabitants and its officers is governmental, even when the officers are performing duties which relate to the management of the city. And he said: `In the performance of its duty to promote and protect the public health, a city is not acting in a private or proprietary capacity, but purely in a governmental *Page 528 
capacity in the discharge of one of the highest duties it owes to its citizens. State ex rel. Martin v. Juneau, 238 Wis. 564, 570 [300 N.W. 187].'" 269 Wis. at 283.
Despite the fact that the Morgan case was not explicitly discussed, it was clearly overruled by Froncek. Under the fact situation that you outlined in the opinion request, then, a municipality acting in response to an order of the Department of Natural Resources issued pursuant to sec. 144.025 (2) (r), Stats., would clearly be acting in its governmental capacity in complying with the order, and not in a proprietary capacity. Thus, the constitutional limitation on indebtedness would not apply to such a municipality. See also Columbia County v. Wisconsin RetirementFund (1962), 17 Wis.2d 310, 331, 116 N.W.2d 142, where the court held that the statutory obligation of a county created by the enlargement of the Wisconsin Retirement Fund did not constitute indebtedness within the meaning of the constitution because it was not "an indebtedness voluntarily incurred by the county" but rather "an obligation imposed upon the county by law."
In addition to the general police power, municipalities have express statutory authorization to construct waterworks. See sec. 62.22, Stats., (cities); sec. 61.34 (3), (villages). Furthermore, cities and villages are specifically exempted from the requirement of holding a referendum as a condition precedent to the issuance of municipal bonds for waterworks. Sec. 67.05 (5) (b), Stats. Construction of waterworks can also be financed from the municipal general fund absent any specific charter restriction. Eau Claire v. Eau Claire Water Co., supra. A municipality may also construct or purchase a public water supply system under the provisions of chapters 196 and 197, the State's public utility regulation law. Sec. 197.01, Stats. The authority to construct a water utility under chapters 196 and 197 has been held to constitute a separate and complete method of acquisition, unrelated to any other method of acquisition provided for in the statutes. Janes v. Racine (1913), 155 Wis. 1,143 N.W. 707; Wisconsin P. L. v. Public Service Comm. (1936),222 Wis. 25, 267 N.W. 386; Henderson v. Hoesley (1937), 225 Wis. 596, *Page 529 275 N.W. 443; Superior W., L. P. Co. v. Public Service Comm. (1939),232 Wis. 616, 288 N.W. 243.
All of which brings us to the main question raised in your opinion request — does sec. 66.065, Stats., require prior approval of a majority of the electorate in a referendum when a municipality has been ordered by your Department to construct a public water supply system? I am of the opinion the answer is no. Section 66.065, as it relates to this opinion request, provides as follows:
"Acquisition. (1) Any town, village or city may construct, acquire or lease any plant and equipment * * * for furnishing water, * * * to the municipality, or to its inhabitants * * *; may acquire a controlling portion of the stock of any corporation owning private waterworks * * *; and may purchase the equity of redemption in a mortgaged or bonded waterworks * * *.
"(2) A resolution, specifying the method of payment and submitting the question to a referendum, shall be adopted by a majority of all the members of the board or council at a regular meeting, after publication at least one week previous in the official paper.
"(3) The notice of the referendum shall include a general statement of the plant equipment or part thereof it is proposed to acquire or construct and of the manner of payment.
"(4) Referendum elections under this section shall not be held oftener than once a year, except that a referendum so held for the acquisition, lease or construction of any of the types of property enumerated in subsection (1) shall not bar the holding of one referendum in the same year for the acquisition and operation of a bus transportation system by the municipality.
"(4a) The provisions of subs. (2), (3) and (4) shall not apply to the acquisition of any plant, equipment or public utility for furnishing water service when such plant, equipment or utility is acquired by the municipality by dedication or without monetary or financial consideration."
Section 66.065, Stats., was originally enacted by ch. 665, Laws of 1907 as secs. 927-11 through 19, Stats. 1907. It was *Page 530 
later renumbered by ch. 396, Laws of 1921 to sec. 66.06 (8), Stats. 1921, and was renumbered again by ch. 362, Laws of 1947 to sec. 66.065, Stats. It has clearly been construed as requiring referendum approval prior to the initial construction or purchase of a waterworks. See, for example Denning v. Green Bay (1955), 271 Wis. 230, 72 N.W.2d 730. As such, it constitutes a specific legislative restriction on a municipality's authority to construct waterworks. A general statute, such as 66.065, requiring referendum approval has been held to take preference over the more specific statute permitting bonding without referendum, such as sec. 67.05 (5) (b), Stats. Appleton Waterworks Co. v. Appleton
(1903), 116 Wis. 363, 93 N.W. 262. On the other hand, however, sec. 66.065 has been held to be not applicable when a municipality proceeds to acquire a waterworks in accordance with the general public utility law (chs. 196, 197). Janes v. Racine, supra.
A very similar question was put to one of my predecessors in 20 OAG 935, where a municipality had been ordered by the State Board of Health to construct a sewage treatment plant, and where a municipality would have exceeded its constitutional bonding limitation. My predecessor applied the Morgan case and concluded that the city could not go beyond its bonding power, but advised that the city could, nonetheless, levy a special tax or borrow temporarily in order to finance the construction. He then concluded that it was the city's duty to do so, stating as follows:
"* * * There are a number or cases decided by our supreme court which indicate that where by charter or by statute a power is given to a city or an obligation is placed thereon to do certain things in its governmental capacity, that power or command carries with it the light to levy taxes and to borrow money even though such levy or borrowingostensibly violates some other charter or statutory provision. Ellinwoodv. City of Reedsburg, 91 Wis. 131, 134; Oconto City Water Supply Co. v.City of Oconto, 105 Wis. 76, 85; State ex rel. Elliott v. Kelly,154 Wis. 482; Milwaukee v. Raulf, 164 Wis. 172; Miles v. Ashland,172 Wis. 605." 20 OAG at 936. (Emphasis supplied). *Page 531 
I believe the opinion of my predecessor was correct and, when applied to the facts of this opinion request, lead to the conclusion that the municipality has the power to construct a public water supply system without holding a referendum when so ordered by your Department.
I do not agree with the interpretation of the municipal attorney cited to me in your opinion request. As I have discussed above, there is ample authority, both provided expressly by statute or necessarily implied therefrom, for a municipality to carry out its duties under an order of the Department. Section 66.065, Stats., was intended to limit the authority of a municipality to voluntarily engage in the operation of waterworks in its proprietary capacity. To apply that section in this situation would be to interpret sec. 66.065 in derogation of the State's sovereign police power in a matter which the Supreme Court has already found to be of highest importance:
"* * * In the performance of its duty to protect the public health the city of Juneau is not acting in a private or proprietary capacity but purely in a governmental capacity in the discharge of one of the highest duties it owes to its citizens. * * *" State ex rel. Martin v. Juneau,supra, at 570.
In State ex rel. Martin v. Juneau, supra, the court held that the legislature has unrestricted power over municipal corporations in the matter of the promotion and protection of the public health, which is a matter of statewide concern. State ex rel. Martin v. Juneau, supra, at 570-1. Section 66.065 contains no expression of any legislative intent to limit the State's authority in this area. Absent any such express limitation, it must be presumed that the legislature did not intend to limit the Department's authority to order the construction of a public water supply system under sec. 144.026 (2) (r), Stats., either directly, or indirectly by limiting a municipality's power to comply with the order. State v. City of Milwaukee (1911), 145 Wis. 131, 135, 129 N.W. 1101, Ann. Cases 1912A, 1212; Door County v. Plumbers, etc., Local No. 298
(1958), 4 Wis.2d 142, 150, 89 N.W.2d 920. I, therefore, conclude that the requirement of voter approval in a referendum under sec. 66.065, does not apply *Page 532 
when a municipality is ordered to construct a public water supply system pursuant to sec. 144.025 (2) (r).
Your second question asks whether the Department may require a municipality to construct a public water supply system pursuant to sec. 144.025 (2) (r), Stats., if the electors of the municipality voted against such construction in a referendum. The answer to this question is yes. The case of Denning v. Green Bay, supra, is wholly on point here and states clearly that where a referendum is not required to construct a public water supply system (or a portion thereof), then the holding of a referendum, and a negative vote thereon, is advisory only and does not serve to prevent the governing body of the municipality from proceeding with the project in question.
RWW:SMS